# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

IGNACIO AGUILAR-CARDENAS     §
            §
vs.              §        CIVIL NO. 4:17CV624
            §     CRIMINAL NO. 4:14CR81(12)
UNITED STATES OF AMERICA     §

## MEMORANDUM OPINION AND ORDER

The following are pending before the Court:

1. Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. #1);

2. Declaration of Ignacio Aguilar-Cardenas in support of motion to vacate, set aside, or correct a federal sentence or conviction pursuant to 28 U.S.C. § 2255 (Dkt. #3);

3. Government's response to Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. #6); and

4. Petitioner's *pro se* reply to the Government's response to the Petitioner's 28 U.S.C. § 2255 motion (Dkt. #10).

Having considered the Petitioner's motion and declaration and the responsive briefing thereto, the Court finds that the motion should be denied.

## BACKGROUND

On October 8, 2014, the grand jury returned a three-count third superseding indictment against the Petitioner and 13 others.  The third superseding indictment charged the Petitioner in Count One with conspiracy to possess with the intent to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846.  The Petitioner was not charged in any other count.  On July 28, 2015, just two days prior to the Petitioner's scheduled trial date, the Petitioner entered a plea of guilty to Count One of the third superseding indictment without a plea agreement.

1

At the change of plea hearing on July 28, 2015, the Petitioner appeared before the Court with his counsel, Mr. Gaylon Riddels.  The Petitioner acknowledged satisfaction with his counsel's advice.  (Dkt. #575 in 4:14CR81 at p. 4).  Further, the Petitioner testified that he understood the nature of the charges and the elements of the offense.  *Id*. at p. 6.  He stated that he understood that he faced not less than ten years and not more than life imprisonment by entering a plea of guilty.  *Id*. at pp. 6-7.  The Petitioner testified that he understood that the sentence imposed might be different from any estimate provided to him.  *Id*. at p. 10.  He further testified that he understood that if he received a sentence that was more severe than expected, he was still bound by his plea of guilty.  *Id*. at p. 11.  The Petitioner stated that he understood that because he changed his plea to guilty after the Court's deadline to do so, the Court would not be giving the Petitioner any reduction in sentence for acceptance of responsibility.  *Id*. at p. 11.

The Petitioner testified that no promise of leniency was made in return for his plea of guilty. *Id*. at p. 12.  He stated that nobody threatened him to plead guilty.  *Id*.  He testified that he was pleading guilty of his own free will because he was, in fact, guilty.  *Id*.  After acknowledging that he entered into his guilty plea freely and voluntarily, the following exchange took place:

> THE COURT: Of course, we were set for trial in two days and you've been insisting on going to trial.  I just want to ask why now do you want to plead guilty when before you wanted to go to trial?
>
> MR. AGUILAR (Through Interpreter): You want to hear the truth?
>
> THE COURT: Of course I want to hear the truth.
>
> MR. AGUILAR (Through Interpreter): Because everyone there where I am detained says that no one here can win in front of a jury.
>
> THE COURT: Okay.  Is that the only reason?

MR. AGUILAR (Through Interpreter): Yes.

THE COURT: And I guess the question, sir, is that I understand that motivation, but you're still pleading guilty because you are guilty, correct?

MR. AGUILAR (Through Interpreter): Yes.

THE COURT: And you don't want to take the risk of going to the jury and seeing what the jury would do, but you understand that's your right to give up?  If you want a trial, you can have a trial.  But you are pleading guilty because you want to plead guilty and not take that chance?

MR. AGUILAR (Through Interpreter): No.  I am guilty of why I'm pleading guilty.

THE COURT: Let me just ask, does counsel have any questions of him about this issue?

MR. RIDDELS: No, Your Honor.  I've discussed this issue with my client as far as his right to go to trial.  Obviously, it's the 11th hour.  He – we had a contact visit this morning and he expressed his desires to plead guilty to the indictment and proceed forward with a PSR and review that and explore any and all options for any possible reductions that he may be entitled to.

*Id*. at pp. 12-14.

On the same day the Petitioner entered his plea of guilty, the Petitioner executed a Factual

Basis.  (Dkt. #363 in 4:14CR81).  The Court discussed the Factual Basis as follows:

MR. GONZALEZ[1]:  And, Your Honor, before I begin, just so that the record is clear, this is a factual basis that was basically drawn up by the Defendant and is not a factual basis drawn up by the Government.  We believe that it's sufficient for the purpose of this plea of guilty to a conspiracy, but we believe his involvement was more extensive than what's in this document.

––––––––––––––––––––

And six, that Ignacio Aguilar Cardenas' role in the conspiracy was to receive telephone calls from co-conspirators, maintain a drug ledger involving a distribution of kilogram quantities of methamphetamine from various sources.

––––––––––––––––––––

[1]Mr. Gonzalez was counsel for the Government.

3

Said methamphetamine was imported from Mexico, which would then be distributed to other co-conspirators and co-defendants during the term of the conspiracy in the Eastern and Northern Districts of Texas.

_____

THE COURT: And then just in your own words, tell me what you did in this case.

MR. AGUILAR (Through Interpreter): I only received phone calls and I made notation in a ledger.  That's it.

THE COURT: But that was part of the drug conspiracy to distribute methamphetamine?

MR. AGUILAR (Through Interpreter): Yes.

THE COURT: And you knew or it was reasonably foreseeable that the conspiracy involved 500 grams or more of a mixture [or] substance containing a detectable amount of methamphetamine or 50 grams or more of actual methamphetamine?

MR. AGUILAR (Through Interpreter): I didn't know that but now I do.

THE COURT: But, I mean, you knew the conspiracy – standing here today, you know the conspiracy you were involved in involved those amounts?

MR. AGUILAR (Through Interpreter): Yes.

THE COURT: And I just want to make sure.  You tried to minimize a little bit what you did, but you knew you were involved in a conspiracy for drug –

MR. AGUILAR (Through Interpreter): What do you mean minimize?

THE COURT: Well, I mean you knew you were involved.  I want to make sure – the way you stated it, I just want to make sure you're not minimizing your activity.

You knew you were involved in a drug conspiracy and you were receiving phone calls from other co-conspirators and then maintaining a drug log?

MR. AGUILAR (Through Interpreter): I received phone calls from only a few peoples.  That's it.

4

THE COURT: Right, but these were other defendants or co-defendants in this conspiracy, correct?

MR. AGUILAR (Through Interpreter): No.  I received phone calls from an individual from Mexico, and he's the one that is threatening my mother's life.

THE COURT: So the only phone calls you received were from people from Mexico related to the drug conspiracy?

MR. AGUILAR (Through Interpreter): Yes.  They were the ones who told me what I needed to write.

THE COURT: Okay.

MR. GONZALEZ: That person is a co-defendant.

THE COURT: Okay.  And the Government is indicating the person that made that phone call to you was a co-defendant.

MR. AGUILAR (Through Interpreter): I think so.  I don't know.  He's not here.

(Dkt. #575 in 4:14CR81 at pp. 15-19).

In the Presentence Investigation Report ("PSR"), the probation officer calculated the Petitioner's base offense level at 38.  (Dkt. #530 in 4:14CR81, p. 8).  The Petitioner received a two level enhancement based on the following:

**Specific Offense Characteristics:** USSG § 2D1.1(b)(5) calls for a two-level increase if the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under §3B1.2 (Mitigating Role). The defendant stipulated in his Factual Basis that the drugs distributed in this conspiracy were from Mexico; therefore, two levels are added.

*Id*. at p. 8, ¶ 23.  The Petitioner additionally received the following three level enhancement:

**Adjustment for Role in the Offense:** USSG § 3B1.1(b) calls for a three-level increase if the defendant was a manager or supervisor and the criminal activity involved five or more participants. Aguilar-Cardenas recruited and/or managed the

activities of Soriano at 3333 Barnard and also directed Villasenor-Cruz to work with Soriano when Aguilar-Cardenas went to California. There were five or more participants in the conspiracy; therefore, three levels are added.

*Id*. at p. 8, ¶ 25. Based on an offense level of 43 and a criminal history category of I, the probation officer calculated the Petitioner's guideline sentencing range to be life imprisonment.  The Petitioner filed eight objections to the PSR which the Court addressed at the March 7, 2016 sentencing hearing.

With respect to the Petitioner's objection to the three point enhancement for his role in the conspiracy, the Court found as follows:

> So I find by a preponderance of the evidence that paragraph 25—that the three point enhancement, Section 3B1.1(b), was appropriately assessed in this case because you were a manager or supervisor and it involved five or more participants. And I think the Presentence Report clearly shows that to be the case. It actually probably shows that you should have been given four points but the probation officer didn't assess that and I'm not going to change that today. I'll just leave you at the three point enhancement.

(Dkt. #576 in 4:14CR81 at p. 10).

With respect to the Petitioner's objection to the denial of a reduction for acceptance of responsibility, the following exchange ensued:

> THE COURT: . . . And I guess let's go ahead—I reviewed your sentencing memorandum. Before I make the assessment here of the guideline range and everything, in your memorandum you also—you didn't file an objection to this but I'll treat it like that, the issue of the acceptance of responsibility. Because, of course, at the time I took his plea I indicated he would not get acceptance for waiting so long to—make his plea, right on the eve of trial.
>
> So if you want to address that issue.  I know you filed a motion and you can talk about it in terms of a departure or variance in a second, but since you've asked me to put those back in, before I make all the assessments on the Sentencing Guideline ranges, I'll let you address that specific issue first.
>
> MR. RIDDELS: Judge, thank you.
>
> You are correct. My client pled open to the indictment I believe Friday before

6

pretrial.  At my client's request, we came over and entered that plea.

Overall, I would request that we receive the – I guess it would be three points, if allowed by the Government.  If not, it would be two points as for acceptance.

_____

The part that he struggled with most and continues to struggle with most in this case, Your Honor, is his overall role and assessment by the Government as to his part in this multi-individual indictment.  We simply disagree with how the Government is stating that we're a manager or leader in some way.  My client struggled with that in regards to pleading guilty to this particular case.  Ultimately it was his decision to do so.

We would still request, at a minimum, the two points that the Court is allowed to give him in regards to him coming forward, pleading guilty without a binding plea agreement or a plea agreement in this case.

_____

THE COURT:  Okay.  Sir, of course, at the time of your plea I indicated you would not get acceptance, and of course I have the discretion to add the two points back if I feel it's warranted. And part of the problem I have here is that based upon your objections and the position you were taking there, which I properly overruled those objections, you're trying to minimize your involvement in this drug organization. In doing so, again, you're not fully accepting responsibility. So I am denying the request to add the two points back in for acceptance of responsibility.

*Id*. at pp. 12-15.

The Court, having adopted "the factual findings, undisputed facts and the guideline applications in the Presentence Report", found the Petitioner's offense level under the United States Sentencing Guidelines to be a 43 and his criminal history category to be a I.  *Id*. at p. 15.  Based on these parameters, the Court concluded that the advisory guideline range for the Petitioner was life imprisonment.  *Id*.

Before imposing the Petitioner's sentence, the Court heard from the Petitioner who provided the following statement:

Yes. The only thing I would like to say is that I did accept responsibility during one of the interviews that I had from Mr. Gonzalez, but he wanted me to accept more than what I had done and he told me that if I didn't do that, that I would get a level 43.

The federal agent that was there also spoke with me. When he arrested me, he told me that he had been after me for seven months and that he had not been able to prove anything. However, there were people that were talking about me, and so he had to arrest me.

I am sorry that I got caught up in all of this. I did accept the fact that I was part of the conspiracy, but what I could not come to terms with was the time that I was going to be given for this. And I did not—I wanted to go to trial. I did not want to plead guilty but my lawyer advised me that—[2]

_____

When I did that I thought they would show you more of what they had against me.

However, if people talking about me is enough for the level that the U.S. Attorney is recommending to take place, then I am very sorry that I did not accept the plea negotiations as they were offered to me at the beginning.  He had offered nine years.

*Id*. at pp. 21-22.

In response, the Petitioner's counsel stated the following:

Judge, as defense counsel for Mr. Aguilar, I would like to clarify an issue. I

_____

[2]The Interpreter modified the statement as follows:

THE INTERPRETER: The interpreter would like to correct her rendition, Your Honor.

THE COURT: Yes, go ahead.

THE INTERPRETER: What the Defendant said was I did not go to trial because my lawyer advised me that if I went ahead with an open plea, it would be like going to trial in front of you, Your Honor, and that I would be able to see the evidence against me. However, I have not been able to see that evidence.

*Id*. at p. 22.

did explain to him the legal effect of an open plea, the difference being—and I explained as well a bench trial versus a jury trial. I think the Court, when you accepted his plea of guilty, went over those as well.

I just wanted to clarify that issue, that I did explain to my client his right to a jury trial as well as a bench trial, as well as the effect of an open plea to the indictment.

And I believe, if I'm correct, Mr. Gonzalez and I, along with agents, met with him, Mr. Aguilar, numerous times prior to the plea agreement deadline, and I think Mr. Gonzalez explained that as well and clarified some of the effects if you go beyond the plea agreement deadline.

*Id*. at p. 23.

Before imposing sentence, the Court stated the following:

And so we're at this point where I don't believe it was appropriate to give you the acceptance points back, which if I had given you the two points, that would have lowered you at least out of the life sentence. And considering you pleaded guilty right before trial and considering the fact that you tried to minimize your activity in this conspiracy, I couldn't give those back to you. And part of me wishes I could, but based on the factors in that analysis, I can't, based on you minimizing your activity.

So then the question is do I do what your counsel asked and give you variance, and I'll tell you that I would love to give you a variance because I don't like giving life sentences out, but it is hard for me to do that when you stand there making your statement to the Court. Even after I've already told you because of your failure to accept your responsibility and trying to minimize your role, you—given your chance to give a statement to the Court, you blame your counsel, you blame the Government, and you're not taking full responsibility for your actions, and so that's problematic for the Court.

_____

And the reason we got ready for trial is you were insisting on a trial, and so based upon that, I'm—I am not going to grant a variance in your case, even though it doesn't give me any pleasure, any whatsoever, to pronounce the sentence I have to pronounce here in a minute.

*Id*. at pp. 25-26.

The Court subsequently sentenced the Petitioner to life imprisonment.  The Court entered

Judgment on March 7, 2016.  Thereafter, the Petitioner filed a direct appeal which was ultimately

dismissed by the United States Court of Appeals for the Fifth Circuit on December 14, 2016 as

frivolous pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *United States v. Flores*, 632

F.3d 229 (5th Cir. 2011).

Thereafter, on September 6, 2017, the Petitioner filed the instant motion *pro se*.  The

Petitioner alleged three grounds for relief in his § 2255 motion.  They are as follows:

1.   The Petitioner was denied the effective assistance of counsel during plea
     negotiations;

2.   The Petitioner's plea was not knowingly, intelligently and voluntarily entered into
     because he received the ineffective assistance of counsel; and

3.   The Petitioner was denied the effective assistance of counsel at sentencing.

## STANDARD FOR FEDERAL HABEAS CORPUS PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different

from a direct appeal."  *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992).  A movant in a

§ 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction.

The range of claims that may be raised in a § 2255 proceeding is narrow.  A "distinction must be

drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the

other."  *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (*citations omitted*).  A

collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude."  *United

States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  Conclusory allegations, which are unsupported

and unsupportable by anything else contained in the record, do not raise a constitutional issue in a

habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

10

## LAW APPLICABLE TO THE PETITIONER'S CLAIMS

The Petitioner couches all of his claims in terms of receiving the ineffective assistance of counsel.  A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700.  A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).  The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonably professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance.  *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697. "In the context of a guilty plea, that means there is a reasonable probability that the defendant 'would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Valdez*, 18-40495, 2020 WL 5201234, at *4 (5th Cir. Sept. 1, 2020), citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see also Young v. Spinner*, 873 F.3d 282, 285 (5th Cir. 2017).

11

Where, as here, a defendant pleads guilty, the focus of attention is the guilty plea and "whether the plea represents a voluntary and intelligent choice among alternative courses of action open to a defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). A defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Hill*, 474 U.S. at 56-57.

## DISCUSSION AND ANALYSIS

A.     **Claim One (Ineffective Assistance of Counsel During Plea Negotiations)**

The Petitioner argues that but for his counsel's unprofessional errors during plea negotiations, he would have entered a guilty plea prior to the Court's change-of-plea deadline, with or without a plea offer, which would have resulted in a less severe sentence. The Petitioner states that because his counsel advised him that he had several viable trial defenses, he rejected the Government's plea offer.

To meet the prejudice prong of the *Strickland* test in the context of a rejection of a plea offer, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or

12

both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012).  Here, the Petitioner cannot show that he would have accepted any plea offered to him. He testified at his change-of-plea hearing that he finally decided to change his plea to guilty because his fellow inmates told him that he would be convicted.  Although he admitted guilt, throughout his change of plea hearing and his sentencing hearing, the Petitioner minimized his role in the conspiracy.  It is clear from the record that he was reticent to accept the leadership role that he played in this drug conspiracy.  Any plea offered to him by the Government would have required the Petitioner to admit to the full scope of his involvement in the conspiracy.  Since the record reflects that the Petitioner was not willing to do so, the Petitioner has not established by a preponderance of the evidence that he would have accepted a plea agreement.

The Petitioner, however, also contends that he would have entered a guilty plea without the benefit of a plea agreement prior to the Court's change-of-plea deadline so that he could have received the benefit of accepting responsibility for his offense.  Again, the Petitioner fails to meet his burden because the record is replete with examples of the Petitioner declining to accept the role that he played in this conspiracy.  The Petitioner is not entitled to credit for acceptance of responsibility as a matter of right. *United States v. Thompson*, 813 F. App'x 156, 157 (5th Cir. 2020). As such, the Petitioner has not shown, based on the record, that had he entered a plea of guilty prior to the Court's change-of-plea deadline, he would have received a reduction in his sentence.  The Petitioner's first claim for relief fails.

**B.      Claim Two (Ineffective Assistance of Counsel Led to the Entry of a Plea That Was Not Knowing, Intelligent, or Voluntary)**

The Petitioner contends that his counsel advised him that if he entered a plea of guilty without the benefit of a plea agreement, his sentence could be less than ten years.  He further contends that counsel assured him that if he pled guilty, he could still argue his case to the Court and the Government would be required to present evidence as to each contested point.

Again, the record does not support the Petitioner's argument.  The record from the change-of-plea hearing, *supra*., shows that the Petitioner understood that he faced a statutory sentencing range of not less than ten years and not more than life imprisonment.  The Petitioner asked the Court if he could receive a sentence below the statutory minimum.  While the Court explained to the Petitioner that he could not answer that question until after reviewing the PSR, it was unlikely that he would be sentenced below the statutory minimum.  (Dkt. #575 in 4:14CR81 at pp. 7-8).  Finally, the Court informed the Petitioner that because he did not change his plea prior to the Court's change-of-plea deadline, the Petitioner would not be receiving a credit for acceptance of responsibility.  Knowing all of this, the Petitioner still persisted in changing his plea to guilty without the benefit of a plea agreement.  The record clearly reflects that the Petitioner was aware at the time he entered his guilty plea that he would not be receiving a sentence of less than ten years imprisonment.

Further, the record is clear that the Petitioner's counsel discussed with him the effect of entering a plea of guilty.  Counsel for the Petitioner stated during the plea hearing that –

> I've discussed this issue with my client as far as his right to go to trial.  Obviously, it's the 11th hour.  He – we had a contact visit this morning and he expressed his desires to plead guilty to the indictment and proceed forward with a PSR and review that and explore any and all options for any possible reductions that he may be entitled to.

*Id.* at p. 14.

The record demonstrates that counsel did, in fact, do exactly what he explained to the Petitioner that he would do.  Counsel filed objections to the PSR and moved for a downward departure, all of which put the Government to the test on those issues.  The fact that counsel was not successful does not rise to the level of ineffective assistance of counsel.  The Petitioner's claim fails.

### C.      Claim Three (Ineffective Assistance of Counsel at Sentencing)

The Petitioner argues that his counsel was ineffective for failing to adequately prepare him to make a statement at sentencing that demonstrated a sufficient level of acceptance of responsibility. But for counsel's deficient assistance, the Petitioner contends that he would have received a shorter sentence.

Once again, the record does not support the Petitioner's argument.  At the change-of-plea hearing, the Court advised the Petitioner that he would not be receiving a credit for acceptance of responsibility.  At both the change-of-plea hearing and the sentencing hearing, the Petitioner attempted to minimize his role in the conspiracy.  At sentencing, the Petitioner's counsel urged the Court to credit the Petitioner for accepting responsibility in the conspiracy.  Likewise, counsel objected to labeling the Petitioner as a manager or leader, specifically explaining to the Court that the Petitioner struggled with the idea that the Government saw him as such.  While it is clear from the record that the Petitioner's statement to the Court at sentencing reflected his disagreement with the Government's assessment of his role in the conspiracy, it was in accord with his prior statements to the Court.  Therefore, it now seems disingenuous for the Petitioner to argue that his counsel was deficient for failing to advise him to testify falsely before the Court.  The Petitioner's claim fails.

15

## CONCLUSION

Based on the foregoing, the motion for relief pursuant to 28 U.S.C. § 2255 is denied and the case is dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1)(B).  Although the Petitioner has not yet filed a notice of appeal, the Court, nonetheless, addresses whether the Petitioner would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*;  *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim

16

of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of the Petitioner's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Petitioner is not entitled to a certificate of appealability.

It is therefore **ORDERED** that the motion to vacate, set aside, or correct sentence is **DENIED**, and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled on are **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 30th day of September, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

17